IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TRUSTAFF TRAVEL NURSES, LLC, | : | Case No. 1:19-cv-481 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| TRUSTED, INC. and TRUSTED HEALTH, INC., | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF JURISDICTION (DOCS. 29, 37)**

This case is before the Court on the motions to dismiss for lack of personal jurisdiction filed by Defendants Trusted Inc. ("Trusted") and Trusted Health, Inc. ("Trusted Health"). (Docs. 29, 37.) Plaintiff Trustaff Travel Nurses, LLC ("Trustaff") opposes the motions, which are fully briefed and ripe for review. (Docs. 30, 34, 38, 39.) For the reasons below, the Court has personal jurisdiction over both Defendants. Accordingly, the motions to dismiss are **DENIED**.

**FACTS**

This is a trademark infringement action relating to the alleged misappropriation of Trustaff's registered trademark by Trusted and Trusted Health in their provision of temporary and contract employment agency services. (Doc. 26 at ¶ 1.) Trustaff is an Ohio-based travel nurse staffing agency that does business across the United States. (*Id.* at ¶ 2.) Its TRUSTAFF trademark is registered for International Class (IC) 035;

1

"Temporary and Contract Employment Agency Services," with a first use and first use in commerce as early as November 30, 2004. (*Id.* at ¶ 3-4.)

## A. Trusted Operates a Healthcare Employment Digital Marketplace.

Trusted runs a healthcare employment digital marketplace specifically for nursing professionals at www.trustedhealth.com and also operates social media accounts on Facebook, Twitter, Instagram, and YouTube (referred to as the "Trusted Social Media Platforms"). (Doc. 29-2 at ¶ 4.) Trusted owns a pending federal trademark application for TRUSTED in connection with employment agency services, namely, temporary and permanent placement of health care professionals and employment staffing in the field of temporary staffing for nurses. (*Id.* ¶ 4-5.) It is a Delaware corporation with corporate headquarters in San Francisco, California. (*Id.* at ¶ 7.)

Trusted employs approximately 75 individuals, over 40 of whom work in its San Francisco office. (*Id.* at ¶ 7.) A small percentage of Trusted's employees reside and work outside of California, but these employees typically work from home in their respective states because Trusted does not have any offices outside of California. (*Id.*) Three of Trusted's employees are located in Ohio. (*Id.* at ¶ 8.) Two of these employees perform entry-level services for Trusted, and one is a human resources employee. (*Id.*) Trusted does not employ any of the nurse professionals that it places in hospitals or facilities. (*Id.* at ¶ 9.)

Trusted has not entered into any contracts or agreements with businesses located in Ohio (*id.* at¶ 10); secured financial services at any financial institutions in Ohio (*id.* at

2

¶ 11); or directed any advertisements for Trusted's healthcare employment digital marketplace specifically towards citizens in Ohio (*id.* at ¶ 12). Trusted is not registered to transact business in Ohio. (*Id.* at ¶ 13.)

**B.  Trusted Health Provides Temporary Placement of Nurse Professionals.**

Trusted Health is Trusted's subsidiary and, just like its parent, it is a Delaware corporation with its corporate headquarters in San Francisco. (*Id.* at ¶ 8.) Trusted Health employs traveling nurse professionals and contracts with hospitals and other healthcare facilities to provide temporary placement of its nurse employees. (Swilinski Decl. at ¶ 9; Pierce Decl. Doc. 37-1 at ¶ 6.) Trusted Health utilizes Trusted's healthcare employment digital marketplace via the Trusted website. Trusted Health also does not own or operate the Trusted Social Media Platforms. (*Id.*) Trusted Health has permission from Trusted to use the TRUSTED mark in connection with its services. (Doc. 37-1 at ¶ 9.)

Trusted Health has employed hundreds of nurse professionals in California and in other states. Only two Trusted Health nurse employees have been located in Ohio and placed in an Ohio facility, the first nurse was placed from March 11, 2019 to June 8, 2019, and the second nurse was placed at an Ohio facility on January 13, 2020. The revenue generated by Trusted Health in connection with the placement of these two nurses in Ohio facilities is less than a fraction of one percent of Trusted Health's total revenue since the company's inception in 2018. (*Id.* at ¶ 7.)

Trusted Health has contracted with approximately five health systems, hospitals, and/or other healthcare facilities that are located in Ohio. Of these businesses, only two

3

have actually staffed Trusted Health nurse employees. (*Id.* at ¶ 8.) Trusted Health has not secured financial services from, including but not limited to opening any bank accounts with, any financial institutions that are located in Ohio. (*Id.* at ¶ 10.)

Trusted Health does not advertise its services. Rather, Trusted utilizes digital marketing to promote its healthcare employment digital marketplace. As previously noted, Trusted asserts that it does not direct or target any digital marketing (or other advertising efforts) specifically to citizens within Ohio and it has not advertised any specific temporary and/or permanent nurse placement opportunities in Ohio on the Trusted Social Media Platforms. (*Id.* at ¶ 11.)

**C.     Cincinnati-based Nurse Melissa Simpson's Interactions with Trusted.**

In opposition to the motions to dismiss, Trustaff asserts additional jurisdictional facts based on the declarations of registered nurse and Cincinnati resident Melissa Simpson and her husband, Jason Simpson, a nurse recruiter for TruStaff.

Ms. Simpson has worked as a travel nurse for Trustaff. In June 2019, she decided to investigate other travel nurse recruiters in order to have access to jobs near her home and in Ohio. (Doc. 38-10 at ¶ 5.) She accessed Trusted's website, www.trustedhealth.com, and uploaded her personal and professional information and credentials in order to be matched for potential jobs. (*Id.* at ¶ 6-7.) Ms. Simpson's credentials were accepted and she was immediately matched to a number of jobs. (*Id.* at ¶ 8.)

In the following weeks, Trusted, in personally directed emails, "matched" her with approximately 100 different and specific job positions, ranging from Maine to

4

California. When she asked about jobs in Ohio, she was specifically invited to apply for positions in Xenia, Fairfield and Warren, Ohio. In September 2019, Trusted solicited Ms. Simpson by email to recruit her professional colleagues to work for Trusted and promised her a cash incentive for doing so. (*Id.* at ¶ 12.)

Mr. Simpson is one of Trustaff's nurse recruiters. He has placed many nurses on travel assignments in nursing. (Doc. 38-11 at ¶ 4.) On approximately October 1, 2019, Trustaff was contacted by American Mobile Network (AMN) on behalf of an employer seeking to recruit a particular nurse for a specific travel nursing assignment, as they had employed that nurse and were pleased with her work. (*Id.* at ¶ 5.) Mr. Simpson located the nurse in Trustaff's candidate database but found that Trustaff had never placed her on assignment. (*Id.* at ¶ 6.) He telephoned the nurse and asked if she would like to apply for the position through Trustaff. (*Id.* at ¶ 7.) The nurse asked Mr. Simpson if Trustaff and Trusted were the same company. (*Id.* at ¶ 8.) He explained that they were not the same company and suggested that she call her Trusted recruiter if she wanted to apply for the job. (*Id.* at ¶ 9.) The nurse said that she would call the other recruiter and Mr. Simpson has not communicated with her since. (*Id.* at ¶ 10-11.)

## LEGAL STANDARD

When a defendant moves to dismiss a case for lack of personal jurisdiction under Rule 12(b)(2), and the court rules without an evidentiary hearing, the plaintiff need only make a prima facie case of jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988). To meet this burden, the plaintiff must establish "with reasonable particularity" sufficient

contacts between the defendant and the forum state to support jurisdiction. *Neogen Corp. v. New Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The Sixth Circuit has characterized this burden as "relatively slight" and directed courts to "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Cohn*, 839 F.2d at 1169 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)).

"Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712. Accordingly, in order to overcome Defendants' motions to dismiss, Trustaff must demonstrate that (1) jurisdiction over each Defendant, individually, satisfies Due Process, and (2) each Defendant is subject to jurisdiction under one of the nine enumerated bases listed in Ohio's long-arm statute. *Id.*

## ANALYSIS

**A. Due Process**

Federal due process mandates that a non-resident defendant have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). To meet this standard, a plaintiff to plead and prove that the defendant is subject to either general jurisdiction, which requires a showing that the defendant has had continuous and systematic business contacts with Ohio, in which case the state may exercise personal jurisdiction even if the action is unrelated to such contacts; or specific jurisdiction, which requires a

showing that the defendant has purposefully directed its activities at Ohio residents and that the lawsuit relates to or arises out of the defendant's contacts with Ohio. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

A plaintiff in the Sixth Circuit must make three showings to establish specific personal jurisdiction: (1) the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action arises from the defendants acts or such consequences, and (3) the connection between the defendant and the forum state was sufficiently substantial to make the exercise of jurisdiction reasonable. *S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 494 (6th Cir. 2008).

### 1. Defendants Purposefully Availed Themselves of the Privilege of Doing Business in Ohio.

The existence of a contract and communications between the parties in the proposed forum state alone are insufficient to establish purposeful availment. *See Kerry Steel, Inc. v. Paragon Industries*, 106 F.3d 147, 151 (6th Cir. 1997) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 479.

"[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State" by itself does not equate to purposeful availment of the

7

forum State. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). "The proper test for personal jurisdiction is not based on a 'percentage of business' analysis . . . but rather on whether the absolute amount of business conducted by [the defendant] represents something more than "random, fortuitous, or attenuated contacts" with the State. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891-92 (6th Cir. 2002) (citing *Burger King*, 471 U.S. at 475).

For a party to purposely avail itself to a forum State, there must be evidence that the party purposely acted to further its business in the forum State's market. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-723 (6th Cir. 2000). For example, in *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988), cert. denied, 488 U.S. 926 (1988), the Sixth Circuit upheld Michigan's exercise of jurisdiction over an out-of-state defendant on the ground that the "object of the [defendant's] contacts with Michigan [was] to have ongoing, far-reaching consequences in the Michigan dental services market." On the other hand, when a party simply executes a "one-shot," isolated transaction, and does not intend to create an ongoing business relationship with the forum State, the party is not deemed to have purposely availed themselves of the forum State. *See, e.g., Kerry Steel, Inc.*, 106 F.3d at 151-52; *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1302 (6th Cir. 1989).

Here, the record establishes that Trusted and Trusted Health are working together to expand Trusted Health's nurse staffing business into Ohio. Trusted allows Trusted Health to use Trusted's healthcare employment digital marketplace and the TRUSTED mark in connection with its staffing services. The Trusted Social Media

8

Platforms provide additional advertising for the Trusted mark that inures to Trusted Health's benefit. These acts do not establish specific personal jurisdiction in Ohio, but they do establish that Trusted and Trusted Health have jointly pursued a nurse staffing business under the service mark of TRUSTED.

The Defendants' specific contacts with Ohio demonstrate purposeful availment of the forum. Trusted has three employees based in Ohio, one of which is in human resources. Trusted Health executed five business contracts with Ohio healthcare facilities in order to staff its employees in the State. As a result, two of these Ohio healthcare facilities did in fact staff Trusted Health employees. The number of Ohio employees that were staffed in Ohio, or revenue derived from Ohio, is inconsequential. The Defendants' contacts demonstrate that they have purposely laid the groundwork to further Trusted Health's nurse staffing business in Ohio. These are not "random, fortuitous, or attenuated" contacts. *Neogen Corp.*, 282 F.3d at 891-92. Viewing the evidence in the light most favorable to the plaintiff, Trustaff has made the required prima facie showing of purposeful availment.

In making this finding, the Court did not rely on the facts set forth in Melissa Simpson's declaration. Defendants argued that those facts should be disregarded under caselaw holding that a plaintiff's unilateral contacts with an out-of-state defendant are insufficient to establish personal jurisdiction. Because the Court did not rely on Ms. Simpson's declaration, it need not decide that issue here.

2. **The Causes of Action Arose from Defendants' Actions in Ohio.**

"Only when the operative facts of the controversy are not related to the

9

defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasco*, 401 F.2d at 384 n.29. The Supreme Court has stated that when addressing the "arising under" standard, the "proper question is 'whether the defendant's conduct connects him to the forum in a meaningful way.'" *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)).

The operative facts in this case include Trustaff's assertion that Defendants committed trademark law violations by using the TRUSTED mark in connection with the provision of temporary healthcare staffing services. Trusted's website and social media platforms, which promote the TRUSTED mark, do not specifically target Ohio. As discussed above, however, Defendants' other actions in furtherance of the business are directed to Ohio. Jason Simpson, a nurse recruiter for Trustaff, provided evidence that Trusted Health's provision of temporary nurse staffing in Ohio under the TRUSTED mark has created confusion regarding whether or not it is affiliated with or the same company as Trustaff. This confusion arising out of Defendants' promotion of staffing services under the TRUSTED mark is precisely the harm that a trademark infringement action seeks to remedy. Such a causal connection satisfies this prong of *Mohasco*. *Neogen Corp.*, 282 F.3d at 892. Trustaff has made a prima facie showing that the causes of action arose from Defendant's activities directed toward or in Ohio.

### 3. The Connection Between Trusted Health and Ohio is Sufficiently Substantial to Make Jurisdiction Reasonable

When analyzing the third prong, "an inference arises that [it] is satisfied if the first two requirements are met." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citing

10

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996)). Several factors are relevant to the reasonableness inquiry, "including the burden on the defendant, the interest of the forum State, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*.

Because the first two prongs are satisfied here, jurisdiction is reasonable. The Defendants' businesses are national in scope, and the burdens to litigate out-of-state asserted by Defendants are rather typical. Moreover, when a parent corporation and its subsidiary collaborate to expand the subsidiary's business into a new state, it reasonable for them to expect that they might be haled into court there to defend that new business. Hence, Trustaff has shown that jurisdiction is reasonable.

**B.     Ohio's Long-Arm Statute**

Trustaff alleges that both Ohio Rev. Code § 2307.382(A)(1) and (A)(4) authorize jurisdiction over Trusted and Trusted Health. Ohio's long-arm statute provides, in relevant part: a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this state, or (4) causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

**1.     O.R.C. § 2307.382(A)(1), Transacting Any Business in Ohio**

Under Ohio Rev. Code § 2307.382(A)(1), identical standards are used to interpret the "transacting any business" standard and the "purposeful availment" and

"substantial connection with the forum State" prongs of the *Mohasco* test. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

Defendants are working together to expand Trusted Health's nurse staffing services in Ohio. Trusted operates an interactive website that matches nurse employees with healthcare facilities in Ohio. Trusted Health utilizes this website and has entered into five business contracts with Ohio healthcare facilities to establish its business in Ohio. Trustaff's injury arises from Trusted Health's offering and selling of these alleged infringing services under the TRUSTED mark in Ohio. These facts suffice to show that Defendants have purposefully availed themselves of Ohio and satisfied the "transacting any business" requirement of the Ohio long-arm statute. Thus, Ohio Rev. Code § 2307.382(A)(1) authorizes jurisdiction over both Trusted and Trusted Health.

### 2. O.R.C. § 2307.382(A)(4), Causing Tortious Injury in Ohio

Ohio Rev. Code § 2307.382(A)(4) requires a finding that "(1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) (quoting *Estate of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio Ct. App. 1999)). "Because a plaintiff whose trademark has been violated potentially suffers economic harm as a result of the defendant's actions, the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." *Id.* Trustaff's primary office is located in Ohio. Trustaff claims that the alleged violations of trademark law have caused it economic harm in Ohio. (Doc. 26 at ¶ 26.) Mr. Simpson's declaration further supports a finding that the economic consequences of Defendants' alleged unlawful

12

conduct have occurred in Ohio. Thus, Ohio Rev. Code § 2307.382(A)(4) also authorizes jurisdiction over Trusted and Trusted Health.

## CONCLUSION

Trustaff has established a prima facie case for the exercise of specific personal jurisdiction over Trusted and Trusted Health under the Due Process Clause. As Ohio's long-arm statute also authorizes personal jurisdiction over Defendants, their motions to dismiss for lack of jurisdiction (Docs. 29, 37) are denied.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND